UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIM EVANS and DAVE FRANKLIN,<br><br>        Plaintiffs,<br><br>v.<br><br>NEXTECH AR SOLUTIONS CORP.,<br><br>        Defendant. | **MEMORANDUM & ORDER**<br>20-CV-03880 (HG) (AYS) |

**HECTOR GONZALEZ**, United States District Judge:

Plaintiffs, two investors in a Canadian company, NexTech, the Defendant, purchased warrants pursuant to agreements that allowed them to convert the warrants into shares at a fixed price until March 29, 2020.  The relevant contracts governing the sale of the warrants allowed NexTech to "accelerate" the warrants' expiration "[i]f, at any time following completion of a Going Public Transaction, the closing price of [NexTech]'s common shares on the Exchange [was] $0.75 or more for the preceding ten (10) consecutive trading days."  ECF No. 51-8 at 8 (Subscription Agreement).[1]  After NexTech went public, it triggered that acceleration provision, but on a date when the shares had not traded at the required level for "the preceding ten (10) consecutive trading days."  When Plaintiffs tried to exercise their warrants long after the purported accelerated expiration date but within the original window provided for by the agreements, NexTech refused to honor the request.  However, because the acceleration was improper under the unambiguous language of the contract, Plaintiffs' warrants were unexpired, and the company breached its agreements with Plaintiffs by refusing to allow them to exercise their warrants.  Accordingly, the Court grants Plaintiffs' motion for partial summary judgment

---

[1]      The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

only with respect to liability on their breach of contract claim, as well as Plaintiffs' summary judgment motion seeking dismissal of Defendant's counterclaims as to Plaintiff Franklin. *See* ECF No. 50-3 (Plaintiffs' Motion for Partial Summary Judgment). The Court also grants Defendant's summary judgment motion seeking dismissal of Plaintiffs' unjust enrichment claim. *See* ECF No. 51 (Defendant's Motion for Partial Summary Judgment). The Court denies all other requests for relief in both motions.

## FACTUAL BACKGROUND

On March 2, 2019, Plaintiffs Jim Evans and Dave Franklin, citizens of Georgia, each bought 258,000 units in NexTech AR Solutions Corp., a Canadian company with its principal place of business in Vancouver, for $64,500.[2] ECF No. 51-4 ¶¶ 1–3 (Defendant's 56.1 Statement); ECF No. 52-1 ¶¶ 1–3 (Plaintiffs' Response to Defendant's 56.1 Statement). Under the subscription agreements through which Plaintiffs purchased their units, each unit consisted of one share of NexTech common stock and one warrant, issued in the form of a "warrant certificate," to purchase another share of common stock. ECF No. 51-4 ¶¶ 4–5; ECF No. 52-1 ¶¶ 4–5. The parties agree that "[e]ach Warrant permitted Plaintiffs to purchase one additional share of NexTech . . . at a price of $0.50 per share any time before March 29, 2020, unless NexTech accelerated the expiry date of the Warrants pursuant to the terms described in the Subscription Agreements and the Warrant Certificates." ECF No. 51-4 ¶ 6; ECF No. 52-1 ¶ 6.[3] In other words, unless NexTech moved up the date on which the warrants would expire, Plaintiffs each had the right to purchase an additional 258,000 common shares in the company

---

[2]    All monetary references are to Canadian dollars unless otherwise noted.

[3]    The parties' formulation is somewhat imprecise. The warrant certificates also allowed Plaintiffs to exercise their warrants *on* March 29, 2020, before 5:00 P.M. Vancouver time. *See* ECF No. 51-9 at 2 (Franklin Warrant Certificate); *id.* at 14 (Evans Warrant Certificate).

until March 29, 2020, at the "exercise price" of 50 cents per share.  ECF No. 51-4 ¶¶ 6–7; ECF No. 52-1 ¶¶ 6–7.

In the subscription agreements, Plaintiffs represented that they were "accredited investors" within the meaning of the U.S. Securities and Exchange Commission's Regulation D. ECF No. 51-4 ¶ 22; ECF No. 52-1 ¶ 22.  An "accredited investor" is "any person who comes within" certain categories in Regulation D, or someone "who the issuer reasonably believes comes within" those categories.  *See* 17 C.F.R. § 230.501(a).  For example, any natural person with an individual income over USD $200,000 or joint income with a spouse over USD $300,000 during the most recent two years, and who has a reasonable expectation of reaching the same income level in the current year, qualifies.  *See id.* § 230.501(a)(6).  Relatedly, "[a]ny natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent, exceeds [USD] $1,000,000," may also qualify.  *See id.* § 230.501(a)(5).

Accredited investor status is relevant to a company's ability to sell certain unregistered securities like those at issue here, and the parties agree that "[i]n order to purchase NexTech's unregistered shares and Warrants while complying with SEC regulations, Plaintiffs represented and warranted in the Subscription Agreements that they were 'accredited investors' as defined in Regulation D."  ECF No. 51-4 ¶¶ 21–22; ECF No. 52-1 ¶¶ 21–22.  Specifically, they represented that they were accredited because each had individual income over USD $200,000 or joint income with a spouse over USD $300,000 during the most recent two years (2016 and 2017), and had a reasonable expectation of reaching that same income level in 2018.  ECF No. 51-4 ¶ 23; ECF No. 52-1 ¶ 23.  Although the parties agree that Plaintiff Franklin met the stated income requirements, ECF No. 53-1 ¶ 51 (Defendant's Response to Plaintiffs' 56.1 Statement),

they differ sharply with respect to Plaintiff Evans's accredited investor status. *E.g.*, ECF No. 51-4 ¶¶ 61–62, 65–66; ECF No. 52-1 ¶¶ 61–62, 65–66.

The subscription agreements and warrant certificates are governed by British Columbian and Canadian federal law. ECF No. 51-4 ¶ 16; ECF No. 52-1 ¶ 16. Both the relevant subscription agreements and warrant certificates specified the circumstances under which NexTech could accelerate the warrants' expiration or, in other words, move up the date by which warrant holders would have been required to convert their warrants into shares by paying the exercise price. ECF No. 51-4 ¶¶ 8–9; ECF No. 52-1 ¶¶ 8–9. Specifically, the subscription agreements provided:

> If, at any time following completion of a Going Public Transaction, the closing price of the Issuer's common shares on the Exchange is $0.75 or more for the preceding ten (10) consecutive trading days, the Issuer will have the right to accelerate the expiry of the Warrants by giving notice, via news release, of its exercise of such right and thereafter the Warrants will, without further notice or act by Issuer, automatically expire and be of no further force and effect at 5:00 p.m. (Vancouver time) on the date that is thirty (30) days after the date of said news release.

ECF No. 51-8 at 8; *see also* ECF No. 51-4 ¶ 8; ECF No. 52-1 ¶ 8. Similarly, the warrant certificates provided that warrant holders could exercise their warrants for corresponding shares of stock at the exercise price until March 29, 2020

> except in the event the Corporation completes a Going Public Transaction (defined herein), and the closing price of the Corporation's Shares on the Exchange (defined herein) is $0.75 or more for the preceding ten (10) consecutive trading days and the Corporation has provided notice to the Holder, by news release, that the Holder is required to exercise the Warrants within thirty (30) calendar days or the Warrants will be cancelled in which case all references to the **"Expiry Time"** in this warrant certificate will mean 5:00 p.m. (Vancouver time) on the date that is thirty days after the date of the said news release.

ECF No. 51-9 at 15; *see also* ECF No. 51-4 ¶ 9; ECF No. 52-1 ¶ 9. For the sake of brevity, the Court will, as the parties do, refer just to the subscription agreements, as there is no material difference between the two documents' descriptions of NexTech's acceleration right.

4

The parties agree that NexTech performed a "Going Public Transaction" within the meaning of the subscription agreements on October 31, 2018, when it listed on the Canadian Securities Exchange.  ECF No. 53-1 ¶¶ 12–13.  It is also undisputed that between January 7, 2019, and January 18, 2019, a period which included ten consecutive trading days, ECF No. 53-1 ¶ 14; ECF No. 51-1 at 21, NexTech's stock traded at or above 75 cents per share, ECF No. 51-4 ¶ 32; ECF No. 52-1 ¶ 32.  On the next trading day, January 21, NexTech did not try to accelerate the warrants, and the stock price dipped back below the 75-cent threshold.  ECF No. 53-1 ¶ 16; ECF No. 51-11 at 2 (Defendant's Record of Historical Stock Prices); *accord* ECF No. 50-5 at 181 (Plaintiffs' Record of Historical Stock Prices).  On February 5, NexTech issued a press release purporting to accelerate the warrants' expiry to March 7, 2019.  ECF No. 53-1 ¶¶ 20, 22; *see also* ECF No. 50-5 at 186–88 (NexTech Press Release).  NexTech stock did not trade at or above 75 cents per share for ten consecutive trading days prior to that acceleration announcement.  ECF No. 53-1 ¶ 18; ECF No. 51-11 at 3.

After NexTech issued the press release, it emailed Plaintiffs and informed them about the purported accelerated expiration date of March 7.  ECF No. 51-4 ¶¶ 34–35; ECF No. 52-1 ¶¶ 34–35.  Plaintiff Franklin asked NexTech on February 27 about exercising his warrants and NexTech informed him via email that he needed to complete the relevant form by March 7.  ECF No. 51-4 ¶¶ 36–37; ECF No. 52-1 ¶¶ 36–37.  But neither Plaintiff exercised his warrants by that date, when the stock was trading at 54 cents per share.  ECF No. 51-4 ¶¶ 41, 49; ECF No. 52-1 ¶¶ 41, 49.  Months later, in December 2019, Plaintiffs first raised an oral objection to the accelerated expiration with NexTech's CEO.  ECF No. 51-4 ¶ 42; ECF No. 52-1 ¶ 42.  And on March 20, 2020, their lawyer asserted in writing that the warrants remained exercisable until their original expiration date of March 29, 2020.  ECF No. 51-4 ¶ 43; ECF No. 52-1 ¶ 43.

Plaintiffs then tried to exercise their warrants on March 25, 2020, by which point the stock had reached $1.20 per share, but NexTech informed them that the last date on which they could have exercised the warrants was the purported accelerated expiration date of March 7, 2019.  ECF No. 51-4 ¶¶ 44, 46, 51; ECF No. 52-1 ¶¶ 44, 46, 51.

Plaintiffs sold off their NexTech stock between July 2019 and July 2020, collectively earning profits in excess of $500,000.  ECF No. 51-4 ¶¶ 53–54; ECF No. 52-1 ¶¶ 53– 54.  On August 22, 2020, they initiated this suit, alleging breach of contract and unjust enrichment.  *See* ECF No. 1 ¶¶ 34–42 (Complaint).  They seek, *inter alia*, specific performance requiring NexTech to issue them 516,000 shares (in exchange for all their warrants), or alternatively, money damages totaling USD $3,745,022.55.  *Id.* ¶ 42.  Those damages are based on a hypothetical sale in which Plaintiffs would have sold all the shares acquired pursuant to the warrants on July 15, 2020, when NexTech's stock reached its all-time high of $9.65 per share.  ECF No. 51-4 ¶ 56; ECF No. 52-1 ¶ 56.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[4]  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v.*

---

[4]     Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

*Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).

In this case, the Court must also apply foreign law.  The subscription agreements at issue are governed by British Columbian and Canadian federal law, ECF No. 51-4 ¶ 16; ECF No. 52-1 ¶ 16, and the parties agree that Canadian law controls the interpretation of the subscription agreements, *see, e.g.*, ECF No. 50-3 at 14 n.2; ECF No. 51-1 at 31 n.10.  As such, the Court will enforce the choice-of-law provision and interpret the subscription agreements in accordance with the relevant Canadian law.  *See Evans v. SSN Funding, L.P.*, No. 15-cv-5514, 2017 WL 3671180, at *8 n.6 (S.D.N.Y. Aug. 23, 2017) (enforcing choice-of-law provision in subscription agreement in the absence of allegations of fraud "related to the choice-of-law provision"); *Metal Bulletin Ltd. v. Scepter, Inc.*, 192 F. Supp. 3d 377, 381 (S.D.N.Y. 2016) ("'Choice-of-law clauses are presumptively valid where,' as here, the underlying transaction involves international commerce." (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 (2d Cir. 1993))).  "In determining foreign law, the court may consider any relevant material or source . . . whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1; *see also Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 585 U.S. 33, 42 (2018) (under Rule 44.1, a court may "reexamine and amplify material . . . presented by counsel in partisan fashion or in insufficient detail").

## DISCUSSION

### I.    Plaintiffs Are Entitled to Summary Judgment on Their Breach of Contract Claim Because the Acceleration Provision Is Unambiguous

Plaintiffs move for partial summary judgment on their breach of contract claim, ECF No. 50-3 at 13, and Defendant cross-moves for partial summary judgment dismissing that claim, ECF No. 51-1 at 19.  The dispute turns on the conditions under which NexTech was permitted to accelerate the warrants' expiration date.  Neither party provides the elements for a breach of contract claim under the relevant Canadian law, but they also do not argue nor demonstrate "that the elements of a breach of contract claim under [the relevant Canadian] law differ from the elements under New York law."  *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 573 n.7 (S.D.N.Y. 2018).  To the contrary, the parties either explicitly refer to New York law or recite the cause of action as consistent with New York law.  *See* ECF No. 50-3 at 13–14; ECF No. 51-1 at 19–20.[5]  "Accordingly, the Court will apply New York law with respect to the

---

[5]     To the extent either party suggests that there is a distinction, Defendant claims for the first time in its opposition that "under Canadian law, a party asserting breach of contract does not need to prove that the breach caused damages; where no damages result from the breach, Canadian courts will award nominal damages."  ECF No. 53 at 30 (Defendant's Opposition).  In the event of breach, both Canadian and New York law provide for the remedy of nominal damages.  *Compare Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 488 (S.D.N.Y. 2008) ("It is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of the loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any."), *with Stewart v. 643376 B.C. Ltd.*, 2011 CarswellBC 1040, para. 79 (Can. B.C.S.C.) ("Where no actual damages are proven, the remedy for a proven breach is nominal damages.").  In cases "where damages are so uncertain that they may not exist"—as needed to satisfy the damages element of a breach of contract claim—the availability of nominal damages may still allow the party alleging breach of contract to obtain summary judgment.  *See Coney Island Land Co. v. Domino's Pizza, LLC*, No. 15-cv-4746, 2017 WL 213016, at *6 n.5 (E.D.N.Y. Jan. 18, 2017) (alteration omitted) (citing *McCoy Assocs., Inc. v. Nulux, Inc.*, 218 F. Supp. 286, 294 (S.D.N.Y. 2002)).  But insofar as Defendant suggests that Canadian law does not include damages as an element of the cause of action, such a distinction with New York law would be entirely immaterial to Plaintiffs' motion as to liability because, as discussed below, there is no genuine dispute of material fact that Plaintiffs incurred actual damages due to Defendant's breach.

elements of a breach of contract claim." *Mindspirit*, 346 F. Supp. 3d at 573 n.7; *cf. Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 88 (D.D.C. 2010) (applying forum's law where party advocating for application of foreign law failed to "provide any information on the elements of an alleged tort under foreign law"). Those elements are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant, and (4) damages." *Mindspirit*, 346 F. Supp. 3d at 574.[6] The parties contest only the third and fourth prongs.

On a breach of contract claim, summary judgment is appropriate only where the contract is wholly unambiguous. *See Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 115 (2d Cir. 1994). "A court is justified in finding a contractual term to be ambiguous where it may be ascribed conflicting reasonable interpretations." *See Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 468 (S.D.N.Y. 2007). The parties agree that the Court must enforce an agreement according to its plain language. *See Creston Moly Corp. v. Sattva Cap. Corp.*, 2014 CarswellBC 2267, paras. 47, 57 (Can. S.C.) (explaining that "a decision-maker must read the contract as a whole, giving the words used their ordinary and grammatical meaning, consistent with the surrounding circumstances known to the parties at the time of formation of the contract," but those surrounding circumstances "must never be allowed to overwhelm the words of th[e] agreement"); *Olympic Indus. v. McNeill*, 1993 CarswellBC 361, para. 24 (Can. B.C.C.A.) ("The first thing is to see what the parties have expressed in the contract; and then an implied term is

---

[6]     Although there also appears to be no conflict between New York law and the relevant Canadian law with respect to the interpretation of the subscription agreements, as already discussed, the Court will interpret the agreements under Canadian law because "the parties have agreed that [Canadian] law applies" and "the relevant [a]greements contain [Canadian] choice-of-law provisions." *See In re Fairfield Sentry Ltd.*, 627 B.R. 546, 557 (Bankr. S.D.N.Y. 2021). Even had it proceeded just under New York law, the Court would have read the subscription agreements in the same way as it does here, and its conclusion would have been the same.

not to be added because the Court thinks it would have been reasonable to have inserted it in the contract.").

The subscription agreements specify when NexTech was allowed to accelerate the warrants' expiration:  "If, at any time following completion of a Going Public Transaction, the closing price of the Issuer's common shares on the Exchange is $0.75 or more for the preceding ten (10) consecutive trading days, the Issuer will have the right to accelerate the expiry of the Warrants by giving notice, via news release, of its exercise of such right . . . ."  ECF No. 51-8 at 8; *see also* ECF No. 51-4 ¶ 8; ECF No. 52-1 ¶ 8.  Plaintiffs argue that the contract unambiguously provides that "in order for the warrants['] expiry to be accelerated, the closing price of NexTech [stock] must have been $0.75 or more the preceding ten consecutive trading days." ECF No. 50-3 at 14–15 (emphasis omitted).  Accordingly, they claim that NexTech's putative acceleration on February 5, 2019, was ineffective because of the undisputed fact that the stock had not traded at or above 75 cents per share for ten consecutive trading days before that date.  *Id.* at 16; ECF No. 53-1 ¶ 18; ECF No. 51-11 at 3.  Thus, Plaintiffs argue that the company breached the contract by refusing to allow them to exercise their warrants on March 25, 2020, as permitted under the subscription agreements, on the basis that NexTech had accelerated the warrants' expiration over a year earlier.  ECF No. 50-3 at 17–18.  Plaintiffs' reading of the acceleration provision is correct.

In this case, there is just one reasonable interpretation of the acceleration provision. NexTech was permitted to accelerate if its stock traded at "$0.75 or more for ***the preceding ten (10)*** consecutive trading days."  ECF No. 51-8 at 8 (emphasis added).  "The use of the definite article, 'the', clearly implies a reference to a singular, specific, referent."  *See Kocherkewych v. Greyhound Can. Transp. Corp.*, 2006 CarswellBC 808, para. 77 (Can. B.C.C.A.); *accord Nielsen*

10

*v. Preap*, 139 S. Ct. 954, 965 (2019) ("[G]rammar and usage establish that 'the' is a function word indicating that a following noun or noun equivalent is definite . . . ."). As such, "the preceding ten . . . consecutive trading days" refers to one fixed period preceding the day on which NexTech could accelerate. This interpretation is not only faithful to the provision's grammar, but also comports with normal usage and common sense. *See Koninklijke Philips Elecs. N.V. v. Cinram Int'l Inc.*, 603 F. Supp. 2d 735, 739 (S.D.N.Y. 2009). For example, if a doctor were to say, "After today's visit, take this medicine if you are not feeling well for the preceding two consecutive days," it would be plainly unreasonable to think the doctor is instructing her patient to take the medicine at some indefinite point in the future just because the patient felt unwell for any two consecutive days after the visit.

Nevertheless, Defendant urges the Court to adopt such a reading. It views the ten-day provision as such: "'[A]t any time' following a Going Public Transaction, if the stock traded at or above $0.75 for the preceding ten consecutive trading days, NexTech 'will have the right' to accelerate . . . without providing for any expiration of NexTech's right to accelerate following the ten consecutive trading days." ECF No. 51-1 at 22 (emphasis omitted). As Defendant would have it, the ten consecutive trading days "do[] not refer to the time period preceding the date on which NexTech actually accelerates the Warrants, but rather refer[] to the time period preceding the date on which NexTech's 'right to accelerate' arises." *Id.* (emphasis omitted). Defendant tries to muddy the waters, but "[t]he mere articulation of a differing interpretation does not always establish the reasonableness of that interpretation and does not necessarily create ambiguity." *See Sabean v. Portage La Prairie Mut. Ins. Co.*, 2017 CarswellNS 38, para. 42 (Can. S.C.). Such is the case here, where Defendant's interpretation cannot be squared with the provision's text. *See Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)

11

("No[] . . . ambiguity exist[s] where one party's view strains the contract language beyond its reasonable and ordinary meaning.").

The analysis starts with the framing of Defendant's argument.  Its reference to the time period following a going-public transaction specifies the broad period in which the right to accelerate may arise ("After today's visit . . . "), but that does not shed light on the specific condition precedent at issue (" . . .  take this medicine if you are not feeling well for the preceding two consecutive days.").  The acceleration provision makes clear that "NexTech will have the right to accelerate" only when the stock trades at the required price for "***the*** preceding ten (10) consecutive trading days."  ECF No. 51-8 at 8 (emphasis added).  Under Defendant's view, "the" has no limiting effect; the company could accelerate following *any* ten consecutive days of trading at the required level, not *the* ten consecutive days.  But the Court may not write the term "the" out of the contract.  *See Canaccord Genuity Corp. v. Reservoir Mins. Inc.*, 2019 CarswellBC 2147, para. 20 (Can. B.C.C.A.) (in reading the contract as a whole, the Court must "give[] meaning to all of its terms, and avoid[] an interpretation that would render one or more of its terms ineffective).  Finally, the fact that the subscription agreement did not "provid[e] for any expiration of NexTech's right to accelerate following the ten consecutive trading days" is a red herring.  *See* ECF No. 51-1 at 22 (emphasis omitted).  It presupposes that that the subscription agreements created an unbounded opportunity for the company to accelerate after ten consecutive days of trading at the required level, but that view ignores the limiting term "the" that actually appears in the subscription agreements.  *See Sattva*, 2014 CarswellBC 2267, para. 57 ("The interpretation of a written contractual provision must always be grounded in the text . . . .").

The Court easily disposes of Defendant's remaining arguments.  First, Defendant claims that adopting Plaintiffs' interpretation requires writing language into the subscription agreements, such that the company could accelerate if the stock traded at the required level for the "the ***immediately*** preceding" or "the ***directly*** preceding" ten-day period.  ECF No. 51-1 at 22 (emphasis altered).  But that argument just demands the insertion of superfluous language into the contract; as previously explained, the use of the term "the preceding ten (10) consecutive trading days" already fixes the period after which the company could accelerate.  For the same reason, Defendant's references to entirely different contracts that happened to use more explicit language, or to another company whose conduct was consistent with Defendant's practice here, are unpersuasive.  *Id.* at 25–27.  Defendant may not "create ambiguity from whole cloth" just by demanding more clarity from an otherwise unambiguous agreement.  *See Crescent Beach Club LLC v. Indian Harbor Ins. Co.*, 468 F. Supp 3d 515, 542 (E.D.N.Y. 2020).

Second, Defendant puts great weight on the meaning of "preceding."  Citing dictionary definitions of "preceding" standing alone, it argues that "'the preceding' simply means 'earlier than.'"  ECF No. 51-1 at 24.  Defendant is right to point out that "preceding" does not always mean "immediately before."  *Id.*  But its decontextualized approach, which fails to read the acceleration provision "as a whole," *Sattva*, 2014 CarswellBC 2267, para. 47, and views the term "preceding" "in isolation," *Crescent*, 468 F. Supp. 3d at 542, leads to the wrong conclusion because it ignores that "the preceding" modifies the nature of the time period—here, a fixed, definite one—that must have preceded the acceleration notice.

Finally, Defendant argues that its intent in drafting the subscription agreements was to permit acceleration "at any time" after ten consecutive trading days at the required level.  ECF No. 51-1 at 28–29.  But the parties agree that the Court need only consider the parties' intent in

the case of ambiguity, and there is none here.  *See id.* at 28; ECF No. 52 at 10 (Plaintiffs'

Opposition).  Because the contract "reveals an unambiguous meaning, it is not necessary to go

further."  *See Langlois v. Tessaro*, 2018 CarswellBC 2304, para. 42 (Can. B.C.S.C.), *rev'd in*

*irrelevant part*, 2019 CarswellBC 515 (Can. B.C.C.A.).[7]

There is no genuine dispute of material fact as to the rest of the breach element.  Because

NexTech's stock did not trade at 75 cents per share for ten consecutive trading days prior to

February 5, 2019, the subscription agreements did not permit Defendant to initiate the

acceleration of the expiration of Plaintiffs' warrants on that date.  *See* ECF No. 53-1 ¶ 18.  Thus,

the warrants' expiration was never accelerated, and Plaintiffs properly attempted to exercise their

warrants on March 25, 2020, which was within the window for redemption under the

subscription agreements and warrant certificates.  *See* ECF No. 51-4 ¶ 44; ECF No. 52-1 ¶ 44.

---

[7]      Further, the parol evidence rule "precludes oral evidence by a party in the interpretation
exercise which would add to, subtract from, vary or contradict a written contract," particularly
where, as here, the written agreement contains an "entire agreement clause."  *See Cymax Stores*
*Inc. v. Coleco Invs. Inc.*, 2019 CarswellBC 752, paras. 77, 80 (Can. B.C.S.C.) (emphasis
omitted); *see also* ECF No. 51-8 at 11 (entire agreement clause).  Here, Defendant claims that
the purpose of the acceleration provision was to allow the company "to quickly raise capital" and
that if "the Warrants could only be accelerated on a single day that immediately followed the Ten
Consecutive Trading Days, then the purpose of the provision would be frustrated because
NexTech's ability to quickly raise capital would be restricted."  ECF No. 51-1 at 29.  Defendant
relies on the testimony of its CEO, who explained that, in his view, the "spirit" of the contractual
language supported Defendant's broad view of the acceleration right.  ECF No. 51-20 at 9:2–13
(Gappelberg Dep. Tr.).  But Defendant's contention runs headlong into the parol evidence rule,
which "precludes, among other things, evidence of the subjective intentions of the parties."  *See*
*Sattva*, 2014 CarswellBC 2267, para. 59.

Furthermore, it is undisputed that Defendant drafted the contract.  ECF No. 53-1 ¶ 36.
As such, even had the Court determined that that the acceleration provision presented an
"irreconcilable ambiguity" and both Plaintiffs' and Defendant's interpretations were "equally
consistent" with the language of the contract, the rule of *contra proferentum* would demand that
"the interpretation should be chosen which works against the stipulator of the contract," or here,
in favor of Plaintiffs.  *See Pathak v. Royal Bank of Can.*, 1994 CarswellBC 1163, para. 17 (Can.
B.C.S.C.), *aff'd*, 1996 CarswellBC 430 (Can. B.C.C.A.).  However, the Court does not apply the
rule in this case because there is no ambiguity in the contract.

By refusing to allow Plaintiffs to exercise their warrants on that date, Defendant breached the terms of the subscription agreements.

There is also no genuine dispute of material fact that Plaintiffs suffered damages "by los[ing] out on the opportunity to obtain 516,000 shares of NexTech." ECF No. 50-3 at 18. That is more than sufficient to establish the existence of actual damages "directly and proximately caused" by NexTech's breach. *See Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 718 (S.D.N.Y. 2022). Defendant attacks Plaintiffs' methodology for calculating damages, *see* ECF No. 53 at 25–27 (Defendant's Opposition), but that misses the mark because it goes to the calculation of damages after judgment on liability, not damages as an element of the cause of action. *See Washington v. Kellwood Co.*, No. 05-cv-10034, 2015 WL 6437456, at *22 n.31 (S.D.N.Y. Oct. 14, 2015) (explaining the distinction). Defendant does not argue, nor could it based on its sale of the units, that even if NexTech breached the subscription agreements by preventing Plaintiffs from exercising their warrants, Plaintiffs suffered no damages. *See* ECF No. 53 at 25–27. Accordingly, the Court grants Plaintiffs' motion for partial summary judgment, and denies Defendant's motion for partial summary judgment dismissing Plaintiffs' breach of contract claim.

## II.   Defendant Is Not Entitled to Summary Judgment as to Compensatory Damages Because There Are Genuine Issues of Material Fact as to the Reasonableness of Plaintiffs' Mitigation Efforts

Plaintiffs do not seek summary judgment on damages, just liability, and argue that the precise calculation of damages should be left for trial. *See* ECF No. 52 at 14. Defendant seeks summary judgment as to Plaintiffs' maximum recoverable compensatory damages in the event that Plaintiffs cannot obtain specific performance. ECF No. 51-1 at 37–39. Defendant argues that, if Plaintiffs ultimately are entitled only to compensatory damages, that recovery should be limited to $180,600 per Plaintiff, which it calculates by "assuming [Plaintiffs'] would have

mitigated damages by purchasing replacement shares on the open market on the date of the

breach."  *Id.*  By Defendant's own acknowledgement, Canadian law does not fix the actual date

of breach as the relevant point for calculating damages; rather, Plaintiffs must have acted within

a "reasonable time."  *See Baud Corp., N.V. v. Brook*, 1978 CarswellAlta 268, para. 71 (Can.

S.C.), *varied in irrelevant part*, 1979 CarswellAlta 201 (Can. S.C.).  This is consistent with the

general principle in Canadian law that "[P]laintiff[s] must take all reasonable steps to mitigate

[their] losses."  *See Hongkong Bank of Can. v. Richardsons Greenshields of Can. Ltd.*, 1990

CarswellBC 179, para. 9 (Can. B.C.C.A.).

Here, Defendant, as movant, has not met its burden to show that there exists no dispute of

material fact as to Plaintiffs' reasonableness, *see Celotex*, 477 U.S. at 323; *see also Aristocrat

Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 618 F. Supp. 2d 280, 306–309 (S.D.N.Y. 2009)

(denying summary judgment as to mitigation on the basis of factual disputes concerning the

reasonableness of bondholders' conduct).  Granting Defendant's motion would require the Court

to find as a matter of law that a "reasonable" time for Plaintiffs to act in this case was

"immediately."  *See* ECF No. 51-1 at 38.  To reach that conclusion, though, the Court would

need to draw inferences in Defendant's favor regarding fact-intensive issues such as the

attractiveness of the share price on the date of breach and Plaintiffs' willingness to pay it.  *See id.*

at 38–39.  The Court may not do so, *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.,

LLC*, 13 F.4th 247, 259 (2d Cir. 2021), and therefore denies Defendant's motion with respect to

Plaintiffs' recoverable compensatory damages.

### III.   Defendant's Motion for Partial Summary Judgment Dismissing Plaintiffs' Unjust Enrichment Claim Is Granted Because Plaintiffs' Claim Sounds Only in Contract

Defendant seeks summary judgment dismissing Plaintiffs' claim for unjust enrichment,

arguing that Defendant was not unjustly enriched by denying Plaintiffs the chance to exercise

their warrants, and that Plaintiffs are not entitled to an equitable remedy because their claims sound in contract.  ECF No. 51-1 at 31–33.  Although Plaintiffs do not move for summary judgment on their unjust enrichment claim, they also do not address Defendant's argument in their opposition, despite addressing Defendant's other arguments.  *See generally* ECF No. 52.  It is thus clear that Plaintiffs have abandoned their unjust enrichment claim in favor of their successful breach of contract claim, *see Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d Cir. 2014), and Defendant is entitled to summary judgment on the issue.  *See Magtoles v. United Staffing Registry, Inc.*, 665 F. Supp. 3d 326, 356–58 (E.D.N.Y. 2023) (relying on *Jackson* and granting summary judgment as to movant on a claim abandoned by the non-moving party).

Further, summary judgment is appropriate here because Plaintiffs cannot recover on their unjust enrichment claim as a matter of law.  On an unjust enrichment claim, Plaintiffs would need to demonstrate that (1) Defendant has been enriched; (2) Plaintiffs suffered a corresponding detriment, and (3) there is no "juristic reason" that would allow Defendant to retain the enrichment.  *See Craiggs v. Owens*, 2012 CarswellBC 27, para. 34 (Can. B.C.S.C.).  With respect to Defendant's first argument, it is not entitled to summary judgment on the basis that it properly prevented Plaintiffs from exercising their warrants in view of the Court's prior analysis.  But as to its second argument, "[t]he existence of a contract is . . . a well-established reason to deny recovery" on an unjust enrichment claim.  *See Gill v. Gill*, 2022 CarswellBC 2065, para. 49 (Can. B.C.C.A.); *accord Blake v. Wells Est.*, 2007 CarswellBC 2983, paras. 53–54 (Can. B.C.C.A.).  Neither side disputes the existence of valid contracts, and Plaintiffs' unjust enrichment claim replicates the breach claim.  *See* ECF No. 1 ¶ 38 ("As a result of [NexTech's] wrongful conduct, the Plaintiffs were unable to redeem their warrants for [NexTech] stock.").  Accordingly, the Court grants summary judgment in favor of Defendant and dismisses Plaintiffs'

unjust enrichment claim. *See Mindspirit*, 346 F. Supp. 3d at 594–95 (granting summary judgment as to defendant on an unjust enrichment claim when a valid contract was in place and plaintiffs' breach-of-contract claim was "duplicative").

**IV.    Defendant's Motions for Summary Judgment on Its Affirmative Defenses of Waiver and Estoppel Are Denied Because There Are Genuine Disputes of Material Fact as to Plaintiffs' Knowledge of Their Rights and Intention to Abandon Them**

Defendant argues that Plaintiffs' recovery should be barred under the doctrines of waiver and estoppel because Plaintiffs waited too long to object to NexTech's purported acceleration and to try to exercise their warrants. ECF No. 51-1 at 34. Although Defendant discusses the concepts together, they have distinct elements. *See Chriscan Enters. Ltd. v. St. Pierre*, 2016 CarswellBC 3122, para. 59 (Can. B.C.C.A.). A party may waive when it "had (1) a full knowledge of rights; and (2) an unequivocal and conscious intention to abandon them." *See id.*, para. 45; *accord Beavis v. Beavis*, 2014 CarswellBC 4075, para. 56 (Can. B.C.S.C.). A party must be "fully cognizant of [an] adverse right" to waive it. *See Anderson v. S. Vancouver*, 1911 CarswellBC 102, para. 105 (Can. S.C.). The more flexible doctrine of estoppel applies when "the owner of the legal right has done something beyond mere delay to encourage the wrongdoer to believe that he does not intend to rely on his strict rights, and the wrongdoer must have acted to his prejudice in that belief." *See Chriscan*, 2016 CarswellBC 3122, para. 60.

It is undisputed that, although not required to, NexTech sent emails to Plaintiffs about its February 5, 2019, acceleration notice, which they both received. ECF No. 51-4 ¶¶ 34–35; ECF No. 52-1 ¶¶ 34–35. It provided an additional email reminding Plaintiff Evans about the same. ECF No. 51-4 ¶ 39; ECF No. 52-1¶ 39. Nor is it disputed that Plaintiff Franklin asked NexTech questions about exercising his warrants in the week before the putative accelerated expiration, and that NexTech told him that he needed to exercise the warrants by March 7, 2019. ECF No.

51-4 ¶¶ 36–37; ECF No. 52-1 ¶¶ 36–37.  Finally, neither side contests that Plaintiffs first objected to the acceleration notice in December 2019, and did so in writing on March 20, 2020, approximately ten months and a year, respectively, after NexTech issued the notice.  ECF No. 51-4 ¶¶ 42–43; ECF No. 52-1 ¶¶ 42–43.

Taken together, the undisputed facts prove that NexTech notified Plaintiffs about the date of its purported acceleration, and Plaintiffs chose not to exercise their warrants by that date.  ECF No. 51-4 ¶ 41; ECF No. 52-1 ¶ 41.  But that record does not come close to establishing that Plaintiffs had "a full knowledge of rights" and "an unequivocal and conscious intention to abandon them" needed to establish waiver.  *See Chriscan*, 2016 CarswellBC 3122, para. 59.  The "adverse right" to take action against the putative acceleration was theoretical until Defendant actually breached the agreement by refusing to allow Plaintiffs to exercise their warrants within the time period to which the parties had agreed.  *See Anderson*, 1911 CarswellBC 102, para. 105. Indeed, Plaintiff Franklin explicitly contests that he "understood" prior to the putative accelerated expiration that he was required to actually exercise his warrants by that date, because he "had made no determination of whether that acceleration was proper."  ECF No. 51-4 ¶ 38; ECF No. 52-1¶ 38.  And Defendant points to no evidence to lead the Court to a different conclusion with respect to Plaintiff Evans, in whose favor the Court must resolve any ambiguities at this stage.  *See Loreley*, 13 F.4th at 259.  Similarly, summary judgment on estoppel is inappropriate because Defendant has identified no absence of a genuine dispute of material fact that Plaintiffs "d[id] something beyond mere delay" to lead it to believe Plaintiffs would not stand on their rights, and does not even claim that it relied on Plaintiffs' inaction in any way, much less to its detriment.  *See Chriscan*, 2016 CarswellBC 3122, para. 60.

Accordingly, the Court denies Defendant's motion with respect to its affirmative defenses of estoppel and waiver.

V.     **Plaintiffs' Motion for Summary Judgment Dismissing Defendant's Counterclaims with Respect to Plaintiff Franklin Is Granted Because There Is No Genuine Dispute of Material Fact as to Plaintiff Franklin's Accredited Investor Status**

Plaintiffs move for summary judgment dismissing the counterclaims for fraud or, in the alternative, breach of contract, against Plaintiff Franklin. *See* ECF No. 50-3 at 21. For both the fraud and breach of contract counterclaims, Defendant alleges that "[Plaintiffs] falsely represented and warranted that they were 'accredited investors' at the time of contracting when in fact, they were not." *See* ECF No. 25 (Answer) at 16; *see also id.* at 17 ("[Plaintiffs] materially breached the Subscription Agreements by falsely representing and warranting that [Plaintiffs] were 'accredited investors' at both the time of contracting and following the closing, and by failing to provide notice to NexTech that their representations were inaccurate."). Defendant does not oppose Plaintiffs' motion with respect to Plaintiff Franklin, but contests at length Plaintiffs' motion with respect to Plaintiff Evans. It is obvious that Defendant has abandoned its counterclaims with respect to Plaintiff Franklin. *See Jackson*, 766 F.3d at 197–98; *see also* ECF No. 53 at 27 ("NexTech is Entitled to Summary Judgment on its Counterclaims Against Evans." (emphasis omitted)). Plaintiffs are therefore entitled to summary judgment as to Plaintiff Franklin. *See Magtoles*, 665 F. Supp. 3d at 356–58.

In addition, there is no genuine dispute of material fact that Plaintiff Franklin was accredited, and that his specific representation that he was accredited based on his income, *see* ECF No. 51-8 at 37, was accurate. Defendant does not even dispute that "Franklin . . . met the then current income requirements for accredited investors," and that he also met the net worth requirements, which could separately qualify him as an accredited investor. ECF No. 53-1

20

¶¶ 50–51.  The record also contains uncontroverted evidentiary support for the conclusion that

Plaintiff Franklin was accredited at the time of the subscription, including his testimony that he

met both accreditation thresholds, and specifically that he cleared the income threshold in each

of the relevant years.  ECF No. 50-5 at 209:21–25; 210:25–211:4 (Franklin Dep. Tr.).  Plaintiffs

have demonstrated the absence of a genuine issue of material fact as to Plaintiff Franklin's

accredited status—the basis of both counterclaims—and Defendant has come forward with no

evidence demonstrating the existence of a genuine dispute of material fact.  *Eli Lilly & Co.*, 654

F.3d at 358.  Summary judgment dismissing Defendant's counterclaims with respect to Plaintiff

Franklin is therefore appropriate.

### VI.   The Cross-Motions for Summary Judgment on Defendant's Counterclaims, and Defendant's Motion for Summary Judgment on Its Affirmative Defense, with Respect to Plaintiff Evans's Accredited Investor Status Are Denied Because There Are Multiple Genuine Disputes of Material Fact

In the same way, Defendant moves for summary judgment on its counterclaims against

Plaintiff Evans for fraud or, in the alternative, breach of contract.  *See* ECF No. 51-1 at 40.

Those claims, which have the same factual basis, *see* ECF No. 25 at 16–18, also share an

identical factual basis with Defendant's affirmative defense of fraudulent misrepresentation.

*Compare id.* at 7 (affirmative defense of "fraud and/or fraudulent inducement and/or fraudulent

misrepresentation), *with id.* at 16 (same labeled as a counterclaim).  The crux of Defendant's

argument is familiar:  Plaintiff Evans purchased NexTech's units by representing and warranting

that he was an accredited investor on the basis of his income, even though he did not actually

make the required annual income to qualify as such.  ECF No. 51-1 at 41–42.  NexTech further

claims that it "never would have allowed Plaintiff Evans to purchase the [units] had NexTech

known he was not an accredited investor."  *Id.* at 46.  Plaintiffs cross-move for summary

judgment dismissing just the counterclaims.  ECF No. 50-3 at 18.

21

The parties contest whether fraud claims are permissible when there is a binding contract in place.  Defendant argues that Canadian law provides for "concurrent liability in contract and tort."  *See* ECF No. 53 at 30 n.16 (quoting *Matthew v. La Capitale Civ. Serv. Mut.*, 2020 CarswellBC 1343, para. 97 (Can. B.C.S.C.)).  Plaintiffs respond that such concurrent liability is limited to particular cases, such as the performance of professional services.  *See* ECF No. 54 at 4 (Plaintiffs' Reply).  In their motion for partial summary judgment, Plaintiffs did not seek dismissal of the counterclaim on the basis that Canadian law does not provide for concurrent liability in a case such as this one.  *See* ECF No. 50-3 at 19.  Although the Court is skeptical of such a theory of concurrent liability, Defendant did not have the opportunity to contest its scope as raised for the first time by Plaintiffs in their reply.  Accordingly, the Court will not grant summary judgment to Plaintiffs on this basis and will proceed to consider the fraud claims.  *See Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 651 F. Supp. 3d 695, 711 (S.D.N.Y. 2023).

To establish fraudulent misrepresentation[8] under Canadian law, "(a) the wrongdoer must make a representation of fact to the victim; (b) the representation must be false in fact; (c) the party making the representation must have known the representation was false at the time it was made; (d) the misrepresentor must have intended the victim act on the representation; and (e) the victim must have been induced to enter into the contract in reliance upon it."  *See Mei Zhen Wang v. Feng Yun Shao*, 2019 CarswellBC 1052, para. 24 (Can. B.C.C.A.).  The victim's actions must also have resulted in a loss.  *See Satnam Educ. Found. v. MB Dream Constr. & Supplies Ltd.*, 2020 CarswellBC 1829, para. 26 (Can. B.C.S.C.).

---

[8]     Defendant does not suggest that the Court should evaluate a freestanding "fraud" counterclaim in any way that is different from its "fraudulent misrepresentation" affirmative defense.  Because the two claims are identical, the Court will consider them together.

In this case, serious disputes of fact preclude the grant of summary judgment as to Defendant on its fraud counterclaim and fraudulent misrepresentation affirmative defense, and as to Plaintiffs in seeking to dismiss the counterclaim. For example, the parties contest the falsity of Evans's representation that he had "an individual income in excess of US $200,000 in [2016 and 2017] or joint income with [his] spouse in excess of US $300,000 in [2016 and 2017] and ha[d] a reasonable expectation of reaching the same income level in [2018]." ECF No. 51-8 at 66–67. Defendant contends that Plaintiff Evans's tax returns produced in discovery showed that he made only $20,274, $73,068, and $61,345 (all USD) in 2016, 2017, and 2018, respectively. ECF No. 51-4 ¶ 62; ECF No. 52-1 ¶ 62. At the same time, Plaintiff Evans points to his deposition in which he testified about his ownership of a business that generated earnings of approximately $600,000 at this time. ECF No. 50-5 at 201:4–10 (Evans Dep. Tr.).

There are also unresolved, material factual issues with respect to Plaintiff Evans's knowledge of the alleged falsity of his representations, and Defendant's reliance on them. For instance, Plaintiff Evans presented evidence of substantial personal wealth that could have qualified him as an accredited investor on the basis of his individual net worth, as opposed to income.[9] ECF No. 50-5 at 201:4–22. Indeed, Defendant's CEO testified that when he solicited investors, he was "not judging whether they[] [were] accredited or not accredited." *Id.* at 79:8–9 (Gappelberg Dep. Tr.). On summary judgment, the Court is prohibited from making determinations about witness credibility (*see, e.g.*, ECF No. 55 at 11 n.9 (Defendant's Reply) ("Plaintiff Evans'[s] deposition testimony concerning his income and net worth is

---

[9]     The factual inquiry is further complicated because the part of the subscription agreement in which the investor needed to indicate the basis of his accredited status is far from a model of clarity. Specifically, the investor had to represent that he "satisfie[d] *one or more*" of the Regulation D categories, but then received an instruction, in bold font, to "**check appropriate box**," singular. ECF No. 51-8 at 66 (first emphasis added).

unreliable . . . .")), or weighing the pieces of evidence presented by each side (*see, e.g.*, *id.* at 12 (asking the Court to infer that Defendant CEO's testimony actually demonstrates reliance on Evans's representations)). *See Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017). Accordingly, the Court denies both parties' motions as to Defendant's fraud claims.

Finally, Defendant argues that it is entitled to summary judgment on its alternative request for summary judgment as to the breach of contract claim with respect to Plaintiff Evans. Defendant, however, does not explain in its motion, reply, or opposition how Plaintiff Evans's alleged conduct satisfies the elements of breach of contract under either Canadian or New York law, *see generally* ECF No. 51-1 at 40–46; ECF No. 53 at 30; ECF No. 55 at 10–12, beyond arguing that "Plaintiff Evans'[s] plain breach of the express representations and warranties in his [s]ubscription agreement suffices to award NexTech judgement on its breach of contract claim." ECF No. 53 at 30.  That merely repackages the argument that Plaintiff Evans was not an accredited investor.  *See id.* at 28 ("Plaintiff Evans represented and warranted that he was qualified as an accredited investor solely on account of his annual income . . . .").  As already explained, the Court cannot grant summary judgment on that disputed issue of material fact.

Finally, Plaintiffs argue that the breach of contract counterclaim must be dismissed because it is no more than a claim for third-party contractual indemnity on the basis that, in the subscription agreements, Plaintiffs agreed to "indemnify and hold harmless [NexTech] against all actions, claims, damages, costs, expenses, losses and liabilities which it may suffer or incur as a result" of the agreements.  ECF No. 50-3 at 19 (citing ECF No. 50-5 at 16).  It is undisputed that NexTech has suffered no damages caused by third parties related to the subscription agreements.  ECF No. 53-1 ¶ 43.  Plaintiffs therefore argue that because Defendant has experienced no damages within the scope of the subscription agreements, Defendant's cause of

24

action must fail as a matter of law.  ECF No. 50-3 at 16.  The Court disagrees.  In the event of

breach, the subscription agreements do not necessarily limit damages only to third-party claims.

Indeed, as already explained in detail, were Defendant to prevail on its breach claim with respect

to Plaintiff Evans, it may be entitled to nominal damages even in the absence of actual damages,

such as those arising from third-party claims.  *See supra* note 5.  In addition, Defendant seeks an

equitable rescission remedy.  *See* ECF No. 51-1 at 40.  Because Defendant raises a genuine issue

of material fact as to the existence of damages, its claim "must go to a jury."  *See Nagel*, 590 F.

Supp. 3d at 718–19 (where "evidence regarding actual damages is fairly nonspecific," summary

judgment still inappropriate in light of requested equitable relief and the potential availability of

nominal damages).

## <u>CONCLUSION</u>

For the reasons explained herein, Plaintiffs' motion for partial summary judgment with

respect to liability on their breach of contract claim is GRANTED.  Plaintiffs' motion for partial

summary judgment dismissing Defendant's counterclaims is GRANTED as to Plaintiff Franklin

and DENIED as to Plaintiff Evans.  Defendant's motion for partial summary judgment

dismissing Plaintiffs' unjust enrichment claim is GRANTED.  Defendant's motions for summary

judgment with respect to liability on Plaintiffs' breach of contract claim and Plaintiffs' maximum

recoverable compensatory damages thereunder, its affirmative defenses of waiver and estoppel,

its affirmative defense of fraudulent misrepresentation, and its counterclaims for fraud and

breach of contract as to Plaintiff Evans, are DENIED.

If the parties intend to seek referral to the Court-annexed mediation program or engage in

a settlement conference before Magistrate Judge Shields, they shall notify the Court via joint

letter on or before March 1, 2024.  Otherwise, the parties shall submit their joint pre-trial order in accordance with Section VI.B of the Court's Individual Practices on or before March 15, 2024.

      SO ORDERED.

*/s/ Hector Gonzalez*    
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       February 23, 2024